UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BERNADETTE JAMES                    CIVIL ACTION NO. 6:12-cv-02053

VERSUS                              JUDGE DOHERTY

COMMISSIONER OF THE SOCIAL          MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter DISMISSED WITH PREJUDICE.

## BACKGROUND

The claimant, Bernadette James, was born on November 18, 1965.[1]  She has

a high school education.[2]  She worked from May 1990 to June 1996 as a seamstress

for Martin Mills, and she worked from January 1998 to April 2008 as a cashier at the

---

[1]     Rec. Doc. 3-1 at 112.

[2]     Rec. Doc. 3-1 at 142.

Coushatta Casino Resort in Kinder, Louisiana.[3]  In September 2007, she allegedly tripped over bags of coins while at work and injured her knee.[4]  She last worked on April 30, 2008.[5]

On September 2, 2009, at the age of forty-three, she applied for disability insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of April 30, 2008.[6]  A contemporaneous disability report indicates that the conditions allegedly limiting her ability to work are protruding discs and pinched nerves in her back, arthritis, and torn and loose cartilage in both knees.[7]

On March 18, 2010, a determination was made that Ms. James is not disabled.[8] She then requested a hearing,[9] which was held on March 23, 2011 before Administrative Law Judge ("ALJ") Rowena E. DeLoach.[10]

---

[3]     Rec. Doc. 3-1 at 145.

[4]     Rec. Doc. 3-1 at 37-38, 229, 478.

[5]     Rec. Doc. 3-1 at 35, 136.

[6]     Rec. Doc. 3-1 at 112-115, 116-117.

[7]     Rec. Doc. 3-1 at 136.

[8]     Rec. Doc. 3-1 at 59, 60.

[9]     Rec. Doc. 3-1 at 69.

[10]     A transcript of the hearing is found in the record at Rec. Doc. 3-1 at 29-58.

At the hearing, Ms. James testified that she stopped working in April 2008, after she was injured on the job, because she was not permitted to work while on crutches.  She testified that, since then, she has progressed from crutches to a cane and a walker.[11]  At the time of the hearing, she was receiving workers' compensation payments of $220.93 per week.  She stated that she has problems with her back and her knees, and gets weak and sleepy.  She also stated that her knees lock up and sometimes feel like they are shifting.  She testified that she can only stand up for about three minutes and can only walk for about six to eight feet.  She stated that after sitting for a while, her knees start to hurt.  She also complained of problems sleeping at night.  In addition to problems with her back and knees, she has uncontrolled diabetes and controlled high blood pressure.  She has gained approximately ninety pounds since April 2008 and is 5' 2" tall and weighs 335 pounds.  She claims that she cannot kneel, bend, or stoop and needs help taking a shower.  She folds laundry but does not cook, uses a motorized cart in the grocery store, does not go to church or to visit friends.  She claims that her medications cause side effects including sleepiness, drowsiness, weakness, and nausea.[12]  Although she complained of depression, she

---

[11]     The record contains no doctor's recommendation for the use of these devices.

[12]     The record contains no indication that these alleged side effects were ever reported by Ms. James to her physicians.

does not take any anti-depressant medication. But she does take a medication that treats both anxiety and skin disorders. She also testified that she has a pinched nerve, a ruptured spinal disc, headaches, skin problems, stomach problems, pain in her joints, trembling hands, and a bad bladder.

The ALJ issued an unfavorable ruling on May 17, 2011.[13] On May 24, 2011, Ms. James requested review by the Appeals Council.[14] On May 31, 2012, the Appeals Council denied her request for review.[15] Therefore, the ALJ's ruling is the Commissioner's final decision. On July 30, 2012, Ms. James instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[16]

Ms. James now argues that the Commissioner erred in failing to find that she is disabled.

On April 29, 2008, Ms. James was referred by Coushatta Family Medical Center to St. Mary's Imaging for an MRI of her left knee, based on her complaints of left knee pain, swelling, and locking up, which had started several weeks earlier and was causing her difficulty in walking.[17] The MRI, which was performed on May 2,

---

[13]     Rec. Doc. 3-1 at 16-24.

[14]     Rec. Doc. 3-1 at 12.

[15]     Rec. Doc. 3-1 at 5.

[16]     Rec. Doc. 1.

[17]     Rec. Doc. 3-1 at 395.

-4-

2008, showed findings consistent with transient patella dislocation, possibly related to a tear of the medial patellar retinaculum and rather marked suprapatellar effusion extending laterally.[18]

Ms. James saw Dr. Lionel Mayer on May 7, 2008[19] and reported that she had fallen over some coin bags at work the previous September, resulting in pain in both knees.  She stopped working on April 29, 2008.  She again saw Dr. Mayer on May 21, 2008, June 18, 2008, July 16, 2008, August 6, 2008, September 9, 2008, and September 17, 2008.[20]  On September 23, 2008, Dr. Mayer performed an arthroscopic examination of the left knee with arthroscopic partial synovectomy and removal of a small free chondral or meniscal fragment from the lateral joint compartment.[21]

On December 5, 2008,[22] Ms. James reported to her physician at Southwest Louisiana Primary Health Care Center that she had been experiencing upper and lower back pain since the prior year.  She reported that she fell in September 2007, and stated that it is sometimes difficult for her to move because of the back pain.  She also reported a history of a ruptured disc in her cervical spine approximately twenty

---

[18]     Rec. Doc. 3-1 at 396.

[19]     Rec. Doc. 3-1 at 229.

[20]     Rec. Doc. 3-1 at 225-228.

[21]     Rec. Doc. 3-1 at 230-232.

[22]     Rec. Doc. 3-1 at 210.

years earlier.  X-rays and an MRI were recommended.  She was prescribed Ultram[23] and Flexeril.[24]

On December 16, 2008, an MRI of Ms. James's thoracic spine revealed mild broad-based disc bulges extending from T9-T10 through T11-T12 mildly indenting the ventral thecal sac but not distorting the adjacent thoracic cord; no focal disc protrusions or herniations were otherwise seen.[25]

An MRI of the lumbar spine, taken the same day,[26] showed disc dessication at L4-L5 with a shallow left paracentral disc protrusion but no evidence of nerve root impingement, disc protrusion, significant central canal or neural foraminal stenosis at any lumbar level.  Mild spondylosis at L4-L5 and L5-S1 was noted.  She was referred to Dr. Raffai.

Ms. James saw Dr. Elemer Raffai, an orthopedic surgeon, on January 21, 2009.[27]  Her chief complaints were low back pain and left knee pain.  Dr. Raffai recommended an MRI of her left knee and injected 80 mg. of Depo in her low back.

---

[23]     Ultram is used to treat moderate to moderately severe pain.   WebMD, http://webmd.com/drugs/drug-11276-Xodol (last visited Aug. 19, 2013).

[24]     Flexeril is used to prevent muscle spasms.  WebMD, http://webmd.com/drugs/drug-11372-Xodol (last visited Aug. 19, 2013).

[25]     Rec. Doc. 3-1 at 197.

[26]     Rec. Doc. 3-1 at 195.

[27]     Rec. Doc. 3-1 at 275-277.

On January 27, 2009, Ms. James was evaluated by clinical psychologist David E. Greenway at the request of Disability Determination Services.[28]  Ms. James reported occasional anxiety and depression.  Dr. Greenway found no indication of psychotic symptoms.  He diagnosed an adjustment disorder with mild depression and anxiety, which he related to her deteriorating health, and he assigned a global assessment of functioning rating of 60.[29]  Dr. Greenway opined that Ms. James "should be able to tolerate mild to moderate stress associated with day-to-day work activity and demands.  She should be able to sustain mental effort and persist at a slow pace over the course of a routine 40-hour work week.  Her social skills were adequate, and she should be able to relate to others, including supervisors and co-workers, in employment settings."

Ms. James underwent an MRI examination of the left knee on January 30, 2009.[30]  She saw Dr. Raffai on March 11, 2009, complaining of left knee pain, and

---

[28]     Rec. Doc. 3-1 at 185-187.

[29]     The Global Assessment of Functioning or GAF score is based on a numeric  scale (0 to 100, with 100 indicating no symptoms) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 30-31 (4th ed. 1994) ("DSM–IV"). A GAF score of 60 indicates moderate symptoms or moderate difficulties in social, occupational, or school functioning.  DSM–IV at 32.

[30]     Rec. Doc. 3-1 at 216-217, 292-293.

an MRI was recommended.[31]  She saw Dr. Raffai again on April 9, 2009, complaining of right knee pain, and Dr. Raffai noted that an MRI would be done to rule out torn cartilage.[32]  He also noted that she has arthritis in her knee but can work full duty if she wants to.[33]  An MRI of Ms. James's right knee, taken on April 20, 2009[34] showed very small joint effusion, lateral tilting of the patella, chondromalacia patella,[35] medial and lateral meniscus intrasubstance degeneration, small calcified free intra-articular body, and mild medial and lateral compartment degenerative changes.  She again saw Dr. Raffai on May 21, 2009, complaining of pain in her right knee.[36]  He stated that the MRI showed torn cartilage in her knee and that she will need arthroscopic surgery on the right knee but "she is not ready yet."

In March, April, and May 2009, Ms. James saw Dr. Syed M. Fazal-ur-Rehman, a cardiologist, for complaints of occasional chest pain, occasional shortness of breath,

---

[31]     Rec. Doc. 3-1 at 274.

[32]     Rec. Doc. 3-1 at 271, 323.

[33]     Rec. Doc. 3-1 at 273, 325.

[34]     Rec. Doc. 3-1 at 215, 289, 290.

[35]     Chondromalacia patella and patellofemoral pain syndrome are alternative names for the same condition, which indicates damage to the cartilage under the kneecap.  The Mayo Clinic, http://www.mayoclinic.com/health/chondromalacia-patella/DS00777 (last visited Aug. 19, 2013).

[36]     Rec. Doc. 3-1 at 269-270.

and occasional edema in her feet.[37]  On May 22, 2009, Ms. James underwent left heart catheterization and ventriculography at Heart Hospital of Lafayette, which showed normal coronary arteries and a normal ejection fraction.[38]  At a follow-up appointment on July 9, 2009, Dr. Fazal-ur-Rehman recommended exercise and dietary restrictions.[39]

Ms. James returned to see Dr. Raffai on July 20, 2009, again complaining of right knee pain.[40]  He ordered a hinged knee brace.

Ms. James saw Dr. Raffai again on August 12, 2009.[41]  She complained of right knee pain and back pain.  He noted that she needs arthroscopic surgery on her knee and a back brace.

Dr. Raffai performed surgery on Ms. James's right knee on August 26, 2009 at Savoy Medical Center in Mamou, Louisiana.[42]  The surgery was a chondroplasty, Grade III of the patella of the right knee.  Some loose bodies were removed and arthritis was noted.

---

[37]     Rec. Doc. 3-1 at 248, 249, 235.

[38]     Rec. Doc. 3-1 at 243-247.

[39]     Rec. Doc. 3-1 at 234.

[40]     Rec. Doc. 3-1 at 267-268.

[41]     Rec. Doc. 3-1 at 265-266.

[42]     Rec. Doc. 3-1 at 252-255, 284-287.

On September 3, 2009, Ms. James saw Dr. Raffai for a follow-up visit, and her stitches were removed.  She was still reporting pain in her right knee.[43]

On January 13, 2010, she again saw Dr. Raffai and complained of right knee pain.[44]  He prescribed Lyrica.[45]

On February 27, 2010, Ms. James was examined by Dr. Cristino Dijamco, an internist, at the request of Louisiana Disability Determination Services.[46]   She reported back and knee problems and arthritis and gave a history including right knee surgery in September 2009 and left knee surgery in 2008.  Dr. Dijamco found her morbidly obese.  He found that she walks with some difficulty and had trouble getting on and off the exam table and up and out of a chair, which he associated with her obesity.  Examination of both of her knees was benign, and her gait was normal with no assistive device medically required although she prefers to use a cane.  Lumbar spine flexion was diminished, as was knee flexion on both knees.  Straight leg test was negative.  She was able to squat and walk on her heels, but she was unable to

---

[43]     Rec. Doc. 3-1 at 262-263.

[44]     Rec. Doc. 3-1 at 402.

[45]     This medication is used to treat pain caused by nerve damage due to diabetes or to shingles.  It may also be used to treat nerve pain caused by spinal cord injury and to treat fibromyalgia pain and certain types of seizures.  WebMD, http://webmd.com/drugs/drug-93965-Lyrica+oral (last visited Aug. 19, 2013).

[46]     Rec. Doc. 3-1 at 378-381.

walk on her toes.  There were no acute inflammatory changes over any joint, and she did not appear to have any functional limitations supported by objective findings.

On March 15, 2010,[47] Ms. James returned to see Dr. Raffai, again complaining of right knee pain.  He found point tenderness, stiffness, and muscle spasms.  He refilled her medication and scheduled a follow-up visit.  On July 8, 2010, she again reported right knee pain to Dr. Raffai.[48]  He injected Depo 80 mg in her right knee and scheduled a follow-up visit.  On October 13, 2010, Ms. James again saw Dr. Raffai.[49]  She complained of low back pain, and an x-ray showed advanced arthritis.  She was given an injection of Depo 80 mg in her lower back, and an MRI was recommended.

On January 12, 2011, Dr. Raffai wrote on a prescription pad that "patient is disabled."[50]

On February 21, 2011, Ms. James saw Dr. John E. Cobb, an orthopedic surgeon.[51]  On that day, Ms. James complained of a constant aching and stabbing pain in her right knee, which she rated at 6 out of 10.  She reported that walking, sleeping,

---

[47]     Rec. Doc. 3-1 at 401.

[48]     Rec. Doc. 3-1 at 400.

[49]     Rec. Doc. 3-1 at 474.

[50]     Rec. Doc. 3-1 at 473.

[51]     Rec. Doc. 3-1 at 475-476.

bending, stooping, and sitting aggravate her symptoms.  She said her pain wakes her up at night, increases with activity, and is worsened by standing or walking for a long time.  She also complained of pain in her neck, shoulders, mid and low back, left knee, and both lower legs.  She was using a cane.  She stated that her right knee shifts, locks, and swells when she walks.  It bothers her most when walking and when trying to rise from a seated position.  Dr. Cobb reviewed the MRI report from April 2009, which he interpreted as "demonstrating a mild degree of arthritis."  He took x-rays of the right knee, which showed calcification in the anterior part of the knee, a loose body near the cruciate ligament, and adaptive changes in the patellofemoral joint that are not severe.  His impressions were patellofemoral pain syndrome, chondromalacia patella[52] on the right, and osteoarthritic changes patellofemoral joint medially.  He stated:  "I do not believe that an arthroscope would give her much relief."  He discussed the possibility of an injection that would help with the pain but not cure the problem.  He encouraged her to lose weight, and gave her prescriptions for Xodol,[53] Ultram, and Flexeril.  He also stated that Ms. James "would require

---

[52]      Chondromalacia patella and patellofemoral pain syndrome are alternative names for the same condition, which indicates damage to the cartilage under the kneecap.  The Mayo Clinic, http://www.mayoclinic.com/health/chondromalacia-patella/DS00777 (last visited Aug. 19, 2013).

[53]      Xodol is used to treat moderate to severe pain.  It is comprised of hydrocodone and acetaminophen.  WebMD, http://webmd.com/drugs/drug-144032-Xodol (last visited Aug. 19, 2013).

patellofemoral arthroplasty of the right knee to resolve the problems she is having."[54]
Dr. Cobb opined that Ms. James was unable to work because her work requires
constant standing and that she could possibly work in a sedentary position.

Ms. James followed-up with Dr. Cobb on April 6, 2011[55] and July 6, 2011.[56]
On both dates, she was using a cane and complaining about pain in her knees and
back.  The workers' compensation carrier had not authorized testing with regard to
her back.  She was encouraged to lose weight.  At the last appointment, her
medications were changed to Flexeril, Narco,[57] and Mobic.[58]  The record contains no
evidence of Ms. James having undergone further surgery on her right knee.

---

[54]     Patellofemoral arthroplasty is surgical replacement of the kneecap.  Arthritis Research
UK, http://www.arthritisresearchuk.org/arthritis-information/surgery/knee-replacement (last visited
Aug. 19, 2013).

[55]     Rec. Doc. 3-1 at 488.

[56]     Rec. Doc. 3-1 at 487-488.

[57]     Like Xodol, this drug is used to treat moderate to severe pain.  It is comprised of
hydrocodone and acetaminophen.  WebMD, http://webmd.com/drugs/drug-63-Norco+oral (last
visited Aug. 19, 2013).

[58]     Mobic is a nonsteroidal anti-inflammatory drug used to treat arthritis.  WebMD,
http://webmd.com/drugs/drug-18173-Mobic+oral (last visited Aug. 19, 2013).

The record contains evidence that Ms. James has been consistently noncompliant with her diabetes medications;[59] however, her high blood pressure is controlled with medication.[60]

## ASSIGNMENT OF ERRORS

Ms. James argues that the Commissioner erred by (1) failing to find that she is disabled because she is unable to engage in substantial gainful activity on a daily basis; (2) failing to find that she was entitled to a closed period of disability benefits; (2) failing to find her testimony and pain complaints are fully credible; and (3) failing to give proper weight to the opinions of her treating physician.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[61]   If the Commissioner's

---

[59]     Rec. Doc. 3-1 at 206, 440 (April 6, 2009); Rec. Doc. 3-1 at 432 (September 24, 2009); Rec. Doc. 3-1 at 407 (April 29, 2010); Rec. Doc. 3-1 at 419 (August 11, 2010).

[60]     Rec. Doc. 3-1 at 46-47.

[61]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000).

-14-

findings are supported by substantial evidence, they must be affirmed.[62]  Substantial

evidence is more than a mere scintilla and less than a preponderance.[63]  A finding of

no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings support the decision.[64]  Finding substantial evidence requires

scrutiny of the entire record as a whole.[65]  In applying this standard, the court may not

re-weigh the evidence or substitute its judgment for that of the Commissioner.[66]


### DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that

he or she is disabled.[67]  Disability is defined in the Social Security regulations as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

---

[62]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[63]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[64]     *Boyd v. Apfel,* 239 F.3d at 704.

[65]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[66]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[67]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954
F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*,
810 F.2d 1296, 1301 (5th Cir. 1987).

-15-

12 months."[68]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[69]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[70]

---

[68]     42 U.S.C. § 423(d)(1)(A).

[69]     20 C.F.R. § 404.1572(a)-(b).

[70]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

-16-

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[71] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[72] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[73]

The claimant bears the burden of proof on the first four steps.[74] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[75] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[76] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[71]     20 C.F.R. § 404.1520(a)(4).

[72]     20 C.F.R. § 404.1545(a)(1).

[73]     20 C.F.R. § 404.1520(e).

[74]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[75]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[76]     *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[77]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[78]

In this case, the Commissioner found, at step one, that Ms. James has not engaged in substantial gainful activity since her alleged disability onset date of April 30, 2008.[79]  That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. James has the following severe impairments:  morbid obesity with limited range of motion of the lumbar spine, coronary artery disease, hypertension, and diabetes mellitus.[80]  This finding is also supported by evidence in the record.

At step three, the ALJ found that Ms. James does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[81] Ms. James does not argue that this finding was incorrect.

The ALJ then found that Ms. James retains the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and

---

[77]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[78]    *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[79]    Rec. Doc. 3-1 at 18.

[80]    Rec. Doc. 3-1 at 18.

[81]    Rec. Doc. 5-1 at 18.

-18-

416.967(a).[82]  The ALJ then proceeded to step four, where she found that Ms. James is capable of performing her past work as a cashier but at a sedentary level rather than at the light to medium level that her prior job required.[83]  Having made this finding, the ALJ found that Ms. James has not been disabled from April 30, 2008 through the date of the decision.[84]

Ms. James argues that there are several reasons why the ALJ's conclusion that she is not disabled is erroneous, each of which will be considered in turn.

## I.   THE COMMISSIONER DID NOT ERR IN FAILING TO FIND THAT MS. JAMES IS DISABLED BECAUSE SHE IS UNABLE TO SUSTAIN EMPLOYMENT

Ms. James argues that she is unable to engage in substantial gainful activity on a day-to-day basis, making it unlikely that she can hold down a job for very long.  But she points to no evidence in the record supporting that contention.

The ALJ's well-reasoned opinion concludes that Ms. James retains the residual functional capacity to perform a full range of sedentary work.  The consulting psychologist opined that she is psychologically capable of tolerating the stress associated with day-to-day work activity and able to sustain the mental effort

---

[82]     Rec. Doc. 3-1 at 19.

[83]     Rec. Doc. 3-1 at 23.

[84]     Rec. Doc. 3-1 at 24.

necessary over the course of a routing forty hour work week.[85]   Her most recent orthopedist, Dr. Cobb, opined that she was likely capable of performing sedentary work.[86]   There is no contradictory medical opinion in the record.

Furthermore, there is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases.[87]   Such a finding is necessary only when the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms."[88] No such allegation has been made in this case.   Thus, as in all cases lacking such an allegation, even when the claimant alleges that an impairment causes good days and bad days,[89] "the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination."[90]   "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a

---

[85]     Rec. Doc. 3-1 at 187.

[86]     Rec. Doc. 3-1 at 479.

[87]     *Perez v. Barnhart*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

[88]     *Perez v. Barnhart*, 415 F.3d at 465, quoting *Frank v. Barnhart*, 326 F.3d at 619.

[89]     *Perez v. Barnhart*, 415 F.3d at 465.

[90]     *Perez v. Barnhart*, 415 F.3d at 465.

significant period of time."[91]   In this case, the ALJ found that Ms. James is capable of performing the full range of sedentary jobs.  Subsumed within that conclusion is a finding that she can sustain employment after finding a job.  The undersigned therefore finds that this alleged error lacks merit.

## II.   THE COMMISSIONER DID NOT ERR IN FAILING TO FIND THAT MS. JAMES WAS ENTITLED TO A CLOSED PERIOD OF DISABILITY BENEFITS

In the section of the claimant's brief setting forth the Commissioner's alleged errors, Ms. James contends that the Commissioner erred in failing to find that she was disabled for a time and entitled to a closed period of disability benefits.  But no argument in favor of that contention is set forth in her briefing.  The claimant did not identify a "closed period" for which she should have been granted disability benefits nor did she raise the issue at the hearing or cite any legal authority in support of this contention.

---

[91]      *Singletary v. Bowen*, 798 F.2d at 822 (emphasis in original).

-21-

An issue is deemed abandoned in a Social Security disability appeal when the appellant fails to properly make an argument in support of a contention.[92]  "Merely mentioning a claim does not constitute a supported argument or adequate briefing."[93]

Furthermore, seeking a closed period of disability would be inconsistent with the remainder of Ms. James's arguments.  In cases involving a closed period of disability, the ALJ must decide when the payment of benefits should be terminated under the medical improvement standard, which requires analysis of eight factors to determine whether a claimant's condition has improved to the extent that she is no longer disabled but is now ready to return to the work force.[94]  Ms. James does not argue that she was previously but is no longer disabled.  Instead, she contended at the hearing that her condition has worsened since she first applied for benefits.

Accordingly, the undersigned finds that Ms. James has abandoned any claim she might have had seeking a closed period of disability benefits.

---

[92]    *Eggins v. Astrue*, 351 Fed. App'x 909, 910 n. 2, 2009 WL 3525839, at *1 (5th Cir. 2009).

[93]    *Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 926 (5th Cir. 2008).

[94]    *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002).

III.   **THE COMMISSIONER DID NOT ERR IN FINDING THAT MS. JAMES IS NOT FULLY CREDIBLE**

Ms. James argues that the ALJ erred in finding that she is not fully credible. More particularly, Ms. James suggests that, because she worked for a long period of time, she should be afforded substantial credibility, based on an unreported district court decision from Pennsylvania. While that case's holding is not binding in this jurisdiction, what it actually said was that when a Social Security claimant has worked for a long period of time, his testimony about his work capabilities should be afforded substantial credibility.[95] In this case, the ALJ gave Ms. James's testimony concerning her prior employment position substantial credibility, finding that "the claimant cannot perform her past work as she described it. The claimant testified that she worked as a casino cashier, which entailed standing/walking 7 hours, and lifting/carrying up to 25 pounds. Per her description of the job, this was light to medium work."[96] The ALJ reiterated that Ms. James "is unable to perform her past relevant work as normally performed."[97] However, based on the classification of gambling cashier as a sedentary position in the Dictionary of Occupational Titles, the ALJ found that Ms. James is capable of performing a sedentary gambling cashier job

---

[95]    *Walker v. Sullivan*, No. 89-8718, 1991 WL 125172, at *5 (E.D. Pa. June 28,1991).

[96]    Rec. Doc. 3-1 at 22.

[97]    Rec. Doc. 3-1 at 23.

or any position within the full range of sedentary work.[98]  In reaching that conclusion, it is clear that the ALJ gave Ms. James's testimony concerning her inability to perform her prior position substantial credibility.  This finding was bolstered by the opinion of Ms. James's most recent orthopedic specialist, Dr. Cobb, who opined that she could possibly perform sedentary work.[99]

The ALJ also gave Ms. James's pain complaints appropriate credibility in the context of a well-reasoned residual functional capacity evaluation.  To be found disabling, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment.[100]  The evidence in this case does not support a holding that Ms. James's pain complaints are so unremitting as to be disabling.  Furthermore, whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence, and the ALJ's determination in that regard is entitled to considerable deference.[101]

The credibility determinations of the ALJ are generally entitled to great deference.[102]  In this case, Ms. James has presented no evidence demonstrating that

---

[98]    Rec. Doc. 3-1 at 23-24.

[99]    Rec. Doc. 3-1 at 479.

[100]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[101]    *Chambliss v. Massanari*, 269 F.3d at 522.

[102]    *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

-24-

the ALJ's credibility determinations were not supported by substantial evidence. Accordingly, the undersigned finds that the ALJ did not err in evaluating Ms. James's credibility.

## IV.   THE COMMISSIONER DID NOT ERR IN ASSIGNING WEIGHT TO THE OPINIONS OF THE MEDICAL EXPERTS

Ms. James asserts that the ALJ should have given greater weight to the opinions of her treating physician "Dr. Williams."  But the record contains no reference to a physician named Williams, and Ms. James did not cite to a particular opinion or a particular portion of the record that she contends was not properly evaluated.  Thus, Ms. James has not borne her burden of proof on this issue.

Perhaps Ms. James is arguing that the ALJ should have given greater weight to Dr. Raffai's opinion, written on a prescription pad without any explanation or supporting information, reading only:  "Patient is disabled."[103]  If so, the ALJ addressed this statement and properly gave it little weight because the determination of disability is a legal conclusion reserved to the Commissioner,[104] and because there

---

[103]     Rec. Doc. 3-1 at 473.

[104]     *Frank v. Barnhart*, 326 F.3d at 620.

-25-

was substantial evidence in the record supporting the ALJ's determination that Ms. James can perform sedentary work and, therefore, is not disabled.

Finally, the undersigned notes that the ALJ reviewed each physician's records and expressly designated the amount of weight being given to each doctor's opinions and the reasons why.  Accordingly, the undersigned finds that this argument lacks merit.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. James is not disabled is supported by substantial evidence and was reached by application of the proper legal standards.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 21st day of August 2013.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE